*Decision will be entered under Rule 50.*

VALLEY WASTE DISPOSAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86371.   Promulgated August 30, 1938.

*Robert N. Miller, Esq.*, and *Melvin D. Wilson, Esq.*, for the petitioner.

*L. H. Rushbrook, Esq.*, for the respondent.

OPINION.

Mellott: Respondent, quoting the all inclusive definition of gross income contained in section 22 of the Revenue Act of 1932,[1] contends that petitioner received payments for services performed in excess of the amount expended and that it therefore had an income of $7,180.67. The amount expended in the purchase of the real estate will be considered later. Petitioner contends that the corporation had no income; that the amounts which it received fall into one of two categories, neither of which is taxable; that as to the payments received from nonmembers, they were merely gifts and not taxable income under section 22 (b) (3) of the Revenue Act of 1932,[2] and that the payments received from members were in the nature of capital contributions made by the stockholders, represented an addi-

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after the date of the enactment of this Act, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.

[2] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title;

* * * * * * *

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income).

tional price paid for the stock, and are not taxable income but are to be treated, as respondent in his regulations had always treated such contributions, "as an addition to and as part of the operating capital of the company." (Art. 67, Regulations 77.)

We are inclined to agree, in the main, with petitioner. The money received from nonmembers was paid voluntarily by them and not as the result of any valid contract. It is quite doubtful if any of the payments could have been compelled. The waste oil flowed into the sumps constructed by petitioner for the purpose of collecting the waste from the wells of members. They were so located that they also collected the waste from the wells of nonmembers—a mere fortuitous circumstance so far as the nonmembers were concerned—and when the accumulated oil was burned or otherwise disposed of they were benefited, notwithstanding the fact that petitioner had not been employed to dispose of it. We are not concerned with the question whether or not the payments made by the nonmembers were deductible as expenses. Our question is simply, Were the amounts received by petitioner mere gifts, and, if so, should they have been included in gross income? If they were gifts they formed no part of petitioner's gross income under section 22 (b) (3), *supra*.

A gift has been defined as a voluntary transfer of property by one to another without consideration or compensation therefor. Cf. *David R. Daly, Estate*, 3 B. T. A. 1042. Respondent contends that petitioner rendered bills to the nonmembers for services performed and that the nonmembers simply paid the bills. This, he says, indicates that there was a consideration. But our findings show that the nonmembers were simply advised as to the amount which they would have been required to pay if they had been members. No enforceable obligation rested upon them to make payment. The rendering of the services may have created a "moral obligation"; but a payment made to discharge such an obligation is nevertheless a gift. Cf. *Jessie Chase*, 19 B. T. A. 1040; *John H. Rosseter*, 12 B. T. A. 254; affd., 33 Fed. (2d) 286. Being of the opinion that the amounts received by petitioner from nonmembers were contributions or gifts, we hold that they should not have been included in petitioner's gross income. Cf. *Edwards* v. *Cuba Railroad Co.*, 268 U. S. 628; *Liberty Light & Power Co.*, 4 B. T. A. 155; *Decatur Water Supply Co.* v. *Commissioner*, 88 Fed. (2d) 341. Inasmuch as we can not determine from the evidence the exact amount received from such source during the taxable year, it is necessary that the other questions also be determined.

Did the amounts received from members constitute income to petitioner? We think not. It is clear that petitioner was not organized for profit. The articles of incorporation so state. Its purpose was to dispose of the waste and thus obviate the necessity of each mem-

ber undertaking to collect, identify and dispose of that coming from its wells. It did not attempt to "sell" its services nor did it charge the member in proportion to the oil coming from its wells. It estimated the total amount necessary to dispose of the waste, assessed its members accordingly, and any funds collected during the taxable year which were not expended during that year were to be used for the same purpose during the succeeding year, thereby reducing *pro tanto* the amount to be collected during the succeeding year. Even though it might, for bookkeeping purposes, be labeled "surplus", it really represented an indebtedness to its members, or pay in advance, for services to be rendered during a later year. It was, in no sense, gains, profits, and income as such terms have been defined in *Eisner* v. *Macomber*, 252 U. S. 189, and kindred cases. At best it was a mere accumulation, paid in by the members, to be used for the purpose of disposing of the waste or to be returned to them upon dissolution. As was said by this Board in a case somewhat analogous—*Growers Cold Storage Co.*, 17 B. T. A. 1279—the surplus overassessment "was really an indebtedness or refund due the members and was a liability and not taxable. *Anamosa Farmers Creamery Co.*, 13 B. T. A. 907; *Home Builders Shipping Association*, 8 B. T. A. 903." Cf. *Board of Fire Underwriters of Duluth*, 26 B. T. A. 860; *Uniform Printing & Supply Co.* v. *Commissioner*, 88 Fed. (2d) 75, reversing *Uniform Printing & Supply Co.*, 33 B. T. A. 1073.

In view of our decision upon the above issues it is unnecessary to discuss or decide whether the $2,607.25 invested in real estate by the petitioner during the taxable year is, as contended by the petitioner, deductible as an expense or, as contended by the respondent, represents a capital expenditure.

The respondent erred in determining the deficiency.

*Judgment will be entered for the petitioner.*